UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Alfred Paul Centofanti, III,<br><br>    Petitioner<br>v.<br><br>Dwight Neven, et al.,<br><br>    Defendants | Case No.: 2:13-cv-01080-JAD-PAL<br><br>**Order Granting Motion to<br>Reopen for Limited Purpose<br>but Denying Emergency Motion<br>for Release**<br><br>[ECF Nos. 45, 47] |

Federal habeas petitioner and Nevada inmate Alfred Paul Centofanti, III, moves for emergency release from state custody pending a decision on the merits of his federal habeas petition, citing his risk of infection by the coronavirus disease (COVID-19).[1] The State opposes the request, arguing that it must be directed instead to the Nevada state courts because this federal action has been stayed pending state-court exhaustion of his claims[2] and, regardless, it fails on its merits. I deny Centofanti's motion because, even if this court has the authority to consider such relief, he has not demonstrated that this is an extraordinary case justifying his release from a double life sentence.

**Background**

Centofanti is serving two consecutive sentences of life without the possibility of parole at the Nevada Department of Corrections' (NDOC) High Desert State Prison (HDSP)[3] after a jury found him guilty of first-degree murder with the use of a deadly weapon.[4] This federal habeas

---

[1] ECF No. 45.

[2] *See* ECF Nos. 1, 40.

[3] ECF No. 45 at 27.

[4] ECF No. 21-8 at 8.

action was stayed six years ago to allow Centofanti to exhaust his claims in state court,[5] and that state-court litigation is still ongoing.[6]  He moves this court to lift that stay[7] for the limited purpose of granting him release "pending a decision on the merits of his [currently-stayed federal] petition, or pending the administration of an effective vaccine for COVID-19, whichever comes first."[8]  The State opposes any such relief as both unavailable and unwarranted.[9]

## Discussion

**A.    I assume, for purposes of this motion only, that this court has the authority to grant Centofanti pre-decision release.**

Federal Rule of Appellate Procedure 23 "does not appear to contemplate release on bail pending an initial decision in district court,"[10] so there are no federal rules or statutes addressing this court's authority to grant release pending a decision on the merits of a federal habeas petition.  The Ninth Circuit has not resolved the issue of "whether a district court has the authority to grant bail pending a decision on a 28 U.S.C. § 2254 habeas corpus petition."[11]  But it has noted that "some modern authorities appear to favor recognizing a federal court's power to

---

[5] ECF No. 40.

[6] *See* ECF No. 47 at 2.

[7] *Id.* at

[8] ECF No. 45 at 2.

[9] ECF No. 49 at 3–5 (citing Fed. R. App. P. 23 (governing the transfer of custody pursuant to an application by a custodian while a federal habeas petition is pending and the release of a prisoner when a federal habeas decision is under review)).  Respondents also argue that because Centofanti is being held under a state judgment and is seeking relief in state court, the proper venue for his motion for release is in the state district court.  *Id*. at 3.  Centofanti responds that Respondents fail to cite any authority in support of their argument that the ability to request release in state court removes the federal court's authority to allow release.  ECF No. 50 at 2.  Because I deny Centofanti's emergency motion on its merits, I find that it is unnecessary to resolve this argument.

[10] *In re Roe*, 257 F.3d 1077, 1080 n. 2 (9th Cir. 2001).

[11] *Id.* at 1079–80.

grant bail pending a decision on a habeas corpus petition."[12]  The Ninth Circuit also stated in *In re Roe* that, "[a]ssuming, *arguendo*, that a district court has the authority to release a state prisoner on bail pending resolution of habeas proceedings in extraordinary cases," the petitioner must "make the requisite demonstration that this is an 'extraordinary case[ ] involving special circumstances or a high probability of success.'"[13]  Based on *In re Roe*, I assume, for purposes of Centofanti's motion, that a federal court may grant pre-decisional release in a federal habeas action in extraordinary cases.

**B.    Centofanti has not demonstrated that his is an extraordinary case that merits pre-decision release.**

The question of what standard governs pre-decisional release in a federal habeas action is unsettled.  As one district court recently explained, early case law "held that a conjunctive standard, high probability of success *and* extraordinary circumstances is applicable."[14]  That court goes on to note that the Ninth Circuit in *Lands v. Deeds* stated the standard in the disjunctive—"as *either* high probability of success *or* extraordinary circumstances."[15]  Because

---

[12] *Id.* at 1080; *see also Hall v. San Francisco Superior Ct.*, 2010 WL 890044 (N.D. Cal. 2010) (noting "that all of the other circuit courts that have decided the issue [of whether a federal district court can release a state prisoner on bail pending a decision on the merits of his petition] have concluded that the district court indeed possesses such authority").

[13] *In re Roe*, 257 F.3d at 1080 (quoting *Land v. Deeds*, 878 F.2d 318, 318 (9th Cir. 1989) ("Bail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success.")); *see also Aronson v. May*, 85 S. Ct. 3, 5 (1964) (explaining that, in order to determine whether a habeas petitioner can be released on bail, "it is . . . necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice").

[14] *Malanje Phea v. C. Pfeiffer*, No. 2:20-cv-WBS-GGH-P, 2020 WL 1892427, at *2 (E.D. Cal. Apr. 16, 2020) (citing *Aronson v. May*, 85 S. Ct. 3 (1964) (per Justice Douglas).

[15] *Lands v. Deeds*, 878 F.2d 318, 318 (9th Cir. 1989).

3

Centofanti has demonstrated neither a high probability of success or special circumstances, his motion fails under either standard.

### 1.  *High probability of success*

Centofanti argues that he has a high probability of success on the merits of his petition, especially Ground 1(a), in which he alleges that a juror in his trial concealed the fact that she had a prior felony conviction.[16]  I stayed Centofanti's federal habeas action on July 2, 2014, pending the resolution of his second state habeas petition and any appeal from it.[17]  Respondents correctly note that they have not yet had a chance to raise all potential procedural bars and merits arguments regarding Centofanti's petition and should have a full opportunity to do so before I weigh in.[18]  The underlying state litigation in this case is still ongoing, and once it's concluded, the respondents will get an opportunity—in an unrushed fashion—to raise any defenses to and otherwise answer Centofanti's petition, Centofanti will reply, and only then will I consider whether an evidentiary hearing is necessary.[19]  But until the state-court litigation is completed, I cannot conclude that Centofanti has demonstrated that his federal habeas petition has "a high probability of success."[20]  And even if Centofanti is ultimately successful on the merits of Ground 1(a), whether release would be the appropriate remedy for that alleged error remains to be seen.

---

[16] ECF No. 45 at 5.

[17] ECF No. 40 at 3–4.

[18] ECF No. 49 at 10.

[19] Centofanti alleges that he is entitled to a hearing in federal court to attempt to prove actual bias on the part of a juror.  ECF No. 45 at 9.

[20] *Roe*, 257 F.3d at 1080.

### 2. *Special or extraordinary circumstances*

Nor can I conclude that special or extraordinary circumstances justify release. Centofanti, who is 51 years old, argues that his serious health issues put him at a high-risk of suffering serious complications if he contracts COVID-19.[21] Centofanti was diagnosed with stage four Hodgkin's lymphoma last year and has received twelve rounds of chemotherapy.[22] He also suffers from diminished lung capacity and a possible undiagnosed heart condition.[23] Like nearly every other prisoner who has filed a COVID-19-based motion for release in the last month, Centofanti insists that the prison population is especially likely to get infected because prisoners cannot practice social distancing, cannot sanitize their living spaces, and cannot wash their hands at will.[24] Although NDOC has modified prison policies in light of the COVID-19 pandemic, Centofanti predicts that it is only a matter of time before the spread begins because asymptomatic and pre-symptomatic prison staff members could unwittingly spread the virus despite these new policies.[25] He contends that if he contracts the virus, there is no reasonable way the NDOC can guarantee him adequate treatment, especially considering that one study concluded that patients with hematological cancers have a 33 % death rate from COVID-19.[26] Centofanti explains that he could live with his father or a friend, who both reside in Las Vegas,

---

[21] ECF No. 45 at 23–25. Centofanti only cites to newspaper articles and press reports to establish specific factual points about COVID-19 and the steps required for effective mitigation of the risks presented by COVID-19.

[22] *Id.* at 25.

[23] *Id.*

[24] *Id.* at 20.

[25] *Id.* at 22–23.

[26] *Id.* at 26–27; *see also* ECF No. 50 at 4. Centofanti acknowledges, however, that there is no treatment for COVID-19, so the fear of inadequate treatment is not unique to those who are in custody like him. ECF No. 45 at 26.

Nevada, if he were to be released.[27]  These individuals would also assist him with various logistics, such as arranging for any necessary medical treatment.[28]

Respondents observe that Centofanti fails to support his health-related claims with any medical reports or expert opinions and relies solely on declarations from a family member and an intimate friend.[29]  They note that there have been no confirmed instances of inmates being diagnosed with COVID-19 at HDSP,[30] the medical staff at HDSP have ensured that Centofanti will continue to receive medical care during the COVID-19 pandemic for his conditions, and there is no guarantee or lower risk of Centofanti not acquiring COVID-19 if he were released into the general public.[31]

Importantly, respondents also point out that Centofanti has not shown that the NDOC is unable or unwilling to address COVID-19 problems within Nevada's prisons.[32]  They explain that the NDOC has instituted the following policies in response to COVID-19:

> limiting transfers to and from institutions, screening all individual[s] for COVID-19 signs and symptoms before entry and precluding entry should there be any potential for concern or positive indicators present, reminding inmates of the need to adopt social distancing, ensuring proper cleaning and sanitization of the institutions, and . . . ban[ning] in-person access to all institutions

---

[27] ECF No. 45 at 30.

[28] *Id.*

[29] ECF No. 49 at 6.  In response, Centofanti's counsel notes, as of the date of her reply on May 1, 2020, that she has not yet received Centofanti's signed release to request these records.  ECF No. 50 at 4.

[30] Centofanti notes that there have been three staff members at HDSP who have tested positive for COVID-19.  ECF No. 50 at 5.

[31] ECF No. 49 at 6.

[32] *Id.* at 7.

state-wide to all individuals except for employees and essential vendors.[33]

Courts across the United States have of course recognized the "unprecedented magnitude of the COVID-19 pandemic,"[34] and I am deeply sympathetic to Centofanti's concerns. But they do not merit releasing him from the two consecutive life-without-parole terms that he has been sentenced to serve. The first positive COVID-19 test in Nevada occurred on March 2, 2020.[35] While the number of COVID-19 positive tests have increased in the general population of the state, there have been no confirmed COVID-19 cases among inmates housed at HDSP or even in Nevada's state prisons.[36] Even if an outbreak were to occur, as another court noted, "prison authorities may be able to isolate highly at-risk prisoners, such as [Centofanti], more easily than isolation or 'social distancing' is achieved in the general population, e.g., housing in administrative segregation, partial lockdowns or transfers."[37] In fact, NDOC's COVID-19

---

[33] *Id.* at 8.

[34] *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA, 2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020).

[35] *See, e.g.*, Briana Erickson, *Patient Zero in Nevada's COVID-19 fight mending after month in coma*, LV REV. J., Apr. 17, 2020, https://www.reviewjournal.com/local/north-las-vegas/patient-zero-in-nevadas-covid-19-fight-mending-after-month-in-a-coma-2008589/

[36] Centofanti asserts that this conclusion does not account for how quickly the virus spreads and that there is simply no way to litigate this issue fast enough once there is a reported outbreak to ensure his prompt release. ECF No. 45 at 27; ECF No. 50 at 6. He contends that, by the time the prison publicly reports a confirmed case, an outbreak may already be underway; thus, release before a confirmed outbreak is the only way to mitigate the risk. ECF No. 45 at 28. Alternatively, Centofanti asks me to conditionally grant him release if and when an inmate at HDSP tests positive, order the State to begin widespread testing at HDSP, and order the State to immediately notify me the moment HDSP receives confirmation of a confirmed inmate positive test. ECF No. 50 at 12. Though I appreciate Centofanti's concerns and intend to promptly address each such motion I receive, I do not find that a conditional release or order mandating widespread testing is warranted.

[37] *Malanje Phea*, 2020 WL 1892427, at *2.

protocols provide for isolation in the event an inmate exhibits COVID-19 symptoms.[38] There is also no evidence that the NDOC would not be able to transport COVID-19 positive inmates who need medical support to local hospitals. So the notion that Centofanti would be better protected from the virus by releasing him into the community in a state with more than 5,000 positive-test cases is speculation.[39] I therefore cannot conclude that special circumstances justify Centofanti's release.

**Conclusion**

Centofanti has not demonstrated that his federal habeas case is an extraordinary one involving a high probability of success or special circumstances, justifying his release from two life-without-parole sentences for murder.[40]

IT IS THEREFORE ORDERED that Petitioner's Emergency Motion for Release **[ECF No. 45] is denied**.

And because I addressed the merits of that emergency motion, IT IS FURTHER ORDERED that Petitioner's Motion to Reopen for Limited Purpose of Litigating Emergency

---

[38] NDOC's current COVID-19 protocols include this provision:

> If an offender is suspected of having an illness, or if they self-report feeling ill, NDOC medical staff immediately assess the offender and place them in that facility's infirmary or medically observes them in their cell. Medical staff utilize the appropriate test kits, some of which are provided by the State of Nevada, which are then tested by the State Epidemiologist, to determine a diagnosis and treatment.

State of Nevada Department of Corrections, NDOC COVID-19 UPDATES, implemented protocol 10, http://doc.nv.gov/About/Press_Release/covid19_updates/, last visited 5/1/2020.

[39] https://covidtracking.com/data#state-nv, last visited 5/1/2020.

[40] *In re Roe*, 257 F.3d at 1080 (alteration in original). I note that the parties made several arguments and cited to several cases not discussed above. I have reviewed these arguments and cases and determine that they do not warrant discussion because they do not affect the outcome of the motion.

Motion **[ECF No. 47] is GRANTED**; however, because that limited purpose has concluded, the STAY is hereby reinstated.

Dated: May 4, 2020

_____
U.S. District Judge Jennifer A. Dorsey