# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Alfred Paul Centofanti,

    Petitioner

v.

Dwight W. Neven, et al.,

    Respondents

Case No.: 2:13-cv-01080-JAD-BNW

**Order Granting in Part
Motion to Dismiss**

[ECF No. 85]

Counseled Nevada state prisoner Alfred Paul Centofanti brings this 28 U.S.C. § 2254 federal habeas petition[1] to challenge his 2005 state-court conviction for the first-degree murder of his ex-wife. Respondents move to dismiss a handful of Centofanti's grounds as untimely, unexhausted, or non-cognizable in federal habeas.[2] I grant the motion in part and dismiss grounds 2, 6, and 7 because they are procedurally defaulted and Centofanti cannot show cause to overcome that default. I also find that portions of grounds 3(B)(1), (2), and (3) are procedurally defaulted, but I defer until the merits analysis whether Centofanti can demonstrate cause and prejudice under *Martinez* v. *Ryan*[3] to overcome that default. And I dismiss with prejudice as untimely ground 3(C) and the portion of ground 3(B)(5) that alleges prejudice at sentencing because those grounds don't relate back to Centofanti's original petition.

## Background

On December 20, 2000, Alfred Paul Centofanti shot and killed his ex-wife Gina within days of their divorce, which was initiated by Centofanti after Gina twice assaulted him while

---

[1] ECF No. 74.

[2] ECF No. 85.

[3] *Martinez* v. *Ryan*, 566 U.S. 1 (2012).

drunk.[4]  Centofanti was charged and convicted of first-degree murder with use of a deadly

weapon in 2005 and was sentenced to two consecutive life sentences without the possibility of

parole.[5]  Centofanti appealed his conviction and filed two state petitions for postconviction relief

before filing a pro se habeas petition in this court in 2013.[6]  His federal case was stayed while

Centofanti's second round of state postconviction proceedings was pending.[7]  The Supreme

Court of Nevada affirmed the lower court's denial of his second postconviction petition in 2021.[8]

The following year, and with the assistance of counsel, Centofanti filed a first-amended petition

raising seven claims (some broken into several subclaims) for relief:

1.    Centofanti was deprived of his right to a fair and impartial jury because:

    A.    one juror intentionally concealed a prior felony conviction that would have disqualified her from jury service;

    B.    another juror relied on extrinsic evidence by conducting his own firearms testing during trial;

    C.    yet another juror wore an inappropriate t-shirt during the trial that communicated his thoughts about the case; and

    D.    the gun-testing juror and the inappropriate-shirt-wearing juror slept during large portions of the trial;

2.    Centofanti was deprived of the right to counsel of his choice when the trial court removed prior counsel from the case based on the state's disingenuous representations that he may be a witness at trial;

3.    Centofanti was deprived of effective trial counsel because counsel:

---

[4] *See* ECF No. 74 at 4–5, 30–33.

[5] *Id.* at 7.

[6] *Id.* at 7–15.

[7] ECF No. 40.

[8] *See* ECF No. 58.

A.    pursued a self-defense theory in lieu of the better argument that the state couldn't prove Centofanti had the requisite mental state to commit first-degree murder;

B.    inadequately pursued that self-defense theory by:

    1.    failing to introduce evidence of Gina's violent tendencies;

    2.    using experts at trial who undermined the self-defense theory;

    3.    improperly handling experts who did not testify at trial;

    4.    failing to object to the state's argument that Centofanti pursued a "smear campaign" against Gina despite its representations to the court that it wouldn't advance that argument; and because

    5.    the cumulative weight of those errors undermined the self-defense theory; and

C.    failed to object to the deadly weapon enhancement on double-jeopardy grounds;

4.    the admission of hearsay testimony violated Centofanti's confrontation-clause rights;

5.    the admission of hearsay testimony violated Centofanti's fair-trial rights;

6.    the prosecution committed misconduct during the litigation of Centofanti's post-trial motion for a new trial when it provided false information to the court and failed to properly investigate the information it relied upon; and

7.    Centofanti received ineffective assistance of appellate counsel when counsel failed to challenge various trial errors.[9]

The respondents move to dismiss a handful of Centofanti's grounds for relief as untimely, unexhausted, or non-cognizable in federal habeas. They argue that grounds 2, 3(C), 5, 7, and portions of 3(B) should be dismissed as untimely because they do not relate back to Centofanti's original petition.[10] They add that grounds 5 and 6 should be dismissed as non-cognizable and

---

[9] ECF No. 74.

[10] ECF No. 85 at 6.

3

that grounds 1(A),[11] 2, 3(C), 6, 7, and portions of 3(B) should be dismissed as unexhausted.[12]  In a counseled opposition, Centofanti opposes the motion.[13]

## Discussion

## I.   Exhaustion and procedural default

A state prisoner first must exhaust state-court remedies on a habeas claim before presenting that claim to the federal courts.[14]  This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees.[15]  "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts."[16]  To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state-court level of review available.[17]

A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.'"[18]  A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and

---

[11] The respondents also initially argued that ground 1(A) should be dismissed as untimely, but in their reply they drop that argument, conceding that the claim should be evaluated on exhaustion grounds only.  ECF No. 104 at 2.

[12] *Id*. at 8.

[13] ECF No. 101.

[14] 28 U.S.C. § 2254(b)(1)(A).

[15] *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

[16] *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999).

[17] *O'Sullivan*, 526 U.S. at 844–45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).

[18] *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (noting that fair presentation requires "both the operative facts and federal legal theory upon which a claim is based").

legal theory upon which his federal habeas claim is based.[19]  New factual allegations do not render a claim unexhausted unless they "fundamentally alter the legal claim already considered by the state court."[20]  The federal petition may not be supported by facts that put the claim in a "significantly different and stronger evidentiary posture" than that addressed by the state court.[21]

### A.   Ground 1(A) is exhausted.

In ground 1(A), Centofanti alleges that his right to a fair and impartial jury under the Sixth and Fourteenth Amendments was violated because a juror intentionally concealed a prior felony conviction that would have disqualified her from jury service.[22]  Respondents argue that ground 1(A) is unexhausted because Centofanti did not cite *McDonough Power Equipment, Inc. v. Greenwood*[23] in his brief on direct appeal but refers to *McDonough* in his amended petition.[24] Centofanti argues that he not only presented the operative facts and legal theory to the Nevada appellate court, the allegations in his brief on direct appeal mirrored the *McDonough* standard and he cited *Dyer v. Calderon*,[25] which relies on *McDonough* to explain presumed juror bias.[26] The state also quoted *McDonough* in its answering brief, and the Supreme Court of Nevada relied on a Ninth Circuit case that interprets *McDonough* when it denied relief.[27]

---

[19] *Bland v. California Dept. of Corrs.*, 20 F.3d 1469, 1473 (9th Cir. 1994).

[20] *Vasquez v. Hillary*, 474 U.S. 254, 260 (1986).

[21] *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988).

[22] ECF No. 74 at 17–20.

[23] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984).

[24] ECF No. 85 at 9.

[25] *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998).

[26] ECF No. 101 at 17.

[27] *Id*. at 18.

Centofanti presented the Supreme Court of Nevada with the facts necessary to state a claim for relief and provided a citation to the relevant case law.[28]  Further, "[t]here is no point in asking whether a state court had a 'full and fair opportunity to resolve the federal constitutional claims' when the state court in fact did so."[29]  Because the legal theory and operative facts for ground 1(A) were fairly presented to the Nevada appellate court, I find that this claim is exhausted.

**B.    Grounds 2, 6, and 7 are procedurally defaulted and Centofanti cannot overcome that default.**

*1.    Grounds 2 and 6 are unexhausted.*

In ground 2, Centofanti alleges that he was denied his Sixth and Fourteenth Amendment rights to counsel of his choice when the state court disqualified his counsel based on the state's argument that counsel may be called as a witness to establish possible motive for the crime.[30]  In ground 6, Centofanti alleges that the government committed misconduct when it argued that the juror who intentionally concealed her prior felony conviction actually told the jury commissioner about her felony and that her voting rights had been restored, but both of those statements were false.[31]  Respondents argue that grounds 2 and 6 are unexhausted because even though

---

[28] *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis of his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds. . .").

[29] *Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002).

[30] ECF No. 74 at 24.

[31] *Id*. at 57–59.

Centofanti raised similar claims in his first state habeas petition, he did not raise them before the Nevada appellate court.[32]

Centofanti responds that he fairly presented both claims when he argued before the Supreme Court of Nevada that the state district court "denied [his] federal Constitutional rights as set forth . . . in grounds one through five" of his initial postconviction petition when it failed "to consider claims not reasonably available to [him] at direct appeal, or were otherwise properly before the district court for decision on the merits."[33]  But that all-encompassing statement does not fairly present the factual basis or legal theory of his counsel-of-choice or prosecutorial-misconduct claims.

Centofanti also argues that he exhausted his ground 6 prosecutorial-misconduct claim on direct appeal.  While Centofanti did mention the phrase "prosecutorial misconduct" in the section of his opening appellate brief addressing the juror with a felony conviction, that argument focused on the impact of the juror's misconduct—not the prosecutor's.[34]  Because Centofanti's arguments did not advance the same legal theory as that raised in ground 6, he did not exhaust that claim on direct appeal.  So I find that grounds 2 and 6 are unexhausted.

### 2.    *Ground 7 is procedurally defaulted.*

In ground 7, Centofanti alleges that appellate counsel rendered ineffective assistance by failing to challenge the denial of Centofanti's counsel of choice and the prosecutor's misconduct when responding to Centofanti's motion for new trial.[35]  Centofanti presented this claim to the state appellate court during his second round of postconviction litigation and argued that he

---

[32] ECF No. 85 at 9–10.

[33] ECF No. 92-19 at 34.

[34] *See* ECF No. 90-33 at 8–13.

[35] *Id*. at 60.

couldn't raise the claim in his first round because he had the same counsel for his direct appeal and his first state habeas case.[36]  Centofanti theorized that his counsel thus had an insurmountable conflict of interest because he wouldn't raise an ineffective-assistance-of-counsel claim against himself.[37]  The Nevada Court of Appeals found that this claim was defaulted and the conflict didn't provide good cause to overcome Centofanti's failure to raise the claims earlier because he didn't have a right to effective postconviction counsel.[38]  Centofanti concedes that ground 7 is procedurally defaulted, as the state appellate court disposed of the claim on procedural grounds instead of on the merits.[39]  So I consider it procedurally defaulted and next determine whether Centofanti can overcome default on grounds 2, 6, and 7.

### 3.  *Centofanti fails to demonstrate cause and prejudice to excuse his procedural default on grounds 2, 6, and 7.*

Centofanti argues that if I find grounds 2, 6, and 7 unexhausted or defaulted, he can overcome that default.  As the Supreme Court explained in *Coleman v. Thompson*, a procedural default prevents the federal court from reviewing a habeas claim unless the petitioner can show good cause plus actual prejudice or a fundamental miscarriage of justice.[40]  To demonstrate cause for a procedural default, a petitioner must be able to "show that some objective factor

---

[36] *See* ECF No. 101 at 26.

[37] *Id.*

[38] ECF No. 97-31 at 3–4.

[39] *See Coleman*, 501 U.S. at 730–31; *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that exhaustion cannot be achieved by procedurally deficient or improper means).

[40] *Coleman*, 501 U.S. at 750.

external to the defense impeded" his efforts to comply with the state procedural rule.[41]  The external impediment must have prevented the petitioner from raising the claim.[42]

Centofanti asserts that he can overcome the procedural default of grounds 2 and 6 because his appellate counsel rendered ineffective assistance (which he asserts in ground 7).[43] For ineffective assistance of counsel (IAC) to function as cause to excuse a procedural default, the IAC claim itself must be exhausted before the state courts as an independent claim.[44]  But as discussed *supra*, Centofanti's ineffective-assistance-of-appellate-counsel (IAAC) claim is also defaulted.

Centofanti asserts, however, that if an IAAC claim is defaulted, a petitioner can seek to overcome the default of that claim and thus use it as good cause for other defaulted claims.[45]  He argues that he can overcome the procedural default of his IAAC claim because he could only raise the IAAC claim in postconviction proceedings, but his postconviction counsel was also his appellate counsel and thus would have had to assert his own ineffectiveness, creating a serious conflict of interest.[46]  But because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default.[47]  And in *Davila v. Davis*, the Supreme Court refused "to

---

[41] *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

[42] *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

[43] ECF No. 101 at 19, 25.

[44] *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

[45] *Id*. at 453–54.

[46] ECF No. 101 at 20.

[47] *Coleman*, 501 U.S. at 750.

extend *Martinez*[48] to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim."[49]  So Centofanti's argument appears to be foreclosed by *Davila.*

Centofanti contends that his case is distinguishable from *Davila* because he alleges that his appellate counsel had a conflict of interest, relying on the Ninth Circuit's ruling in *Manning v. Foster*[50] for the proposition that cause may be demonstrated as a result of a conflict of interest when the attorney ceases to be the petitioner's agent.[51]  But Centofanti's reliance on *Manning* is unpersuasive because *Manning* concerned a situation in which trial counsel had a conflict of interest that led him to give a petitioner advice that prevented the petitioner from seeking timely habeas relief.[52]  As explained in *Davila*, habeas courts are more concerned with trial errors than with errors on appeal—the rationale for conducting a cause-and-prejudice analysis for procedurally defaulted ineffective-assistance-of-*trial*-counsel claims doesn't extend to IAAC claims.[53]  Centofanti doesn't explain why this court should extend *Manning*'s recognition that trial counsel's conflict of interest can create cause to overcome procedural default for his postconviction-counsel complaints, and *Davila* appears to foreclose that result.  So Centofanti has failed to meet his burden of demonstrating cause to excuse procedural default based on his

---

[48] Under *Martinez*, 566 U.S. 1, ineffective assistance of postconviction counsel can constitute cause to excuse a procedural default, but only as to claims of ineffective assistance of trial counsel.

[49] *Davila v. Davis*, 582 U.S. 521, 525 (2017).

[50] *Manning v. Foster*, 224 F.3d 1129, 1134 (9th Cir. 2000).

[51] ECF No. 101 at 20.

[52] *Manning*, 224 F.3d at 1134–35.

[53] *See Davila*, 582 U.S. at 530.

appellate counsel's conflict of interest in representing Centofanti at his postconviction

proceedings.  Because Centofanti cannot show cause to overcome procedural default, I need not

reach his assertions of prejudice.[54]  Grounds 2, 6, and 7 are thus procedurally defaulted and

precluded from habeas review.

> **C.**     **Ground 3(B)(1) and portions of grounds 3(B)(2) and (3) are procedurally defaulted, but the court defers until the merits analysis whether Centofanti can overcome that default.**
>
> > **_1._**     **_Ground 3(B)(1) is unexhausted._**

Ground 3 of Centofanti's petition alleges various mistakes that he contends constitute

ineffective assistance of his trial counsel.  In ground 3(B)(1), Centofanti contends that trial

counsel failed to introduce evidence of Gina's capacity for violence, blaming his counsel for

failing to present evidence showing that Gina studied karate and for failing to call Michael

Newman, an expert witness that could "explain the capabilities of someone with" Gina's karate

proficiency.[55]  Centofanti claims that he raised this claim in his appeal of the denial of his first

postconviction petition when he asserted that "trial counsel was ineffective for failing to secure

the attendance of all necessary witnesses at trial."[56]  But Centofanti's failure to specifically

identify Newman or Gina's karate skills in that appeal deprived the state court of the fair

opportunity to rule on the merits of this claim.  So because the new facts that Centofanti provided

in his federal petition place his claim in a substantially different and stronger evidentiary posture,

his claim that counsel was ineffective for failing to call a karate expert is unexhausted.[57]

---

[54] _See Engle v. Isaac_, 456 U.S. 107, 134 n.43 (1982).

[55] ECF No. 74 at 43.

[56] ECF No. 92-12 at 45.

[57] _See Aiken_, 841 F.2d at 883.

Ground 3(B)(1) also alleges that Centofanti's trial counsel was ineffective because he failed to call Gina's mother, Emeline Eisenman, as a witness to testify about specific examples of Gina's propensity for violence.[58]  Centofanti did discuss trial counsel's failure to call Eisenman in his first postconviction appeal, but he argued only that counsel was ineffective because he told the jury that Eisenman would testify but didn't call her as a witness.[59]

Centofanti's federal claim, however, alleges that counsel's presentation of the self-defense theory was ineffective because counsel failed to introduce Eisenman's testimony, which would have supported the argument that Centofanti's fear of Gina was reasonable.  This theory is fundamentally altered from the simpler claim, raised before the state court, that counsel erred by telling the jury that it would hear from Eisenman but didn't call her as a witness.  Because the legal theory on which Centofanti relies wasn't fairly presented to the state court, his argument that counsel was ineffective for failing to call Eisenman as a witness to support the self-defense theory is also unexhausted.  Thus, the entirety of ground 3(B)(1) is unexhausted.

### 2.    *The portion of ground 3(B)(2) discussing firearms expert Jimmy Trahin is unexhausted.*

In ground 3(B)(2), Centofanti contends that trial counsel was ineffective for using a forensic-pathology expert and a firearms expert who undermined his self-defense theory.[60] Respondents argue that this ground is unexhausted to the extent that Centofanti refers to Jimmy Trahin, the firearms expert.[61]  In his postconviction appeal brief, Centofanti presented allegations that counsel failed to investigate defense experts' opinions prior to the presentation of that

---

[58] ECF No. 74 at 43.

[59] ECF No. 92-19 at 45.

[60] ECF No. 74 at 45–46.

[61] ECF No. 85 at 22.

evidence, including several experts "in the area of forensic pathology, ballistics, blood spatter, shootings, and psychology."[62]  Although Centofanti referred to several different types of experts generally on appeal, he did not present facts or arguments with respect to a firearms expert. Centofanti fundamentally altered this claim by adding specificity to what was alleged in state court.  So the portion of ground 3(B)(2) that references counsel's error in calling Trahin is unexhausted.

### 3.    *The portion of ground 3(B)(3) alleging trial counsel's failure to prepare expert witness Lt. Franks is unexhausted.*

Centofanti's ground 3(B)(3) alleges that trial counsel was ineffective for improperly handling experts that ultimately didn't testify at trial.  According to Centofanti, trial counsel told the jury that one expert, Lieutenant Steve Franks, would testify about officer shootings to show that "even police officers involved in shootings do not know how many shots they have fired or how quickly" but failed to call him and also failed to prepare him for trial in the event that he was called.[63]  Respondents argue that Centofanti didn't exhaust the portion of that claim alleging that trial counsel didn't prepare Lt. Franks for trial.[64]  In his postconviction appeal, Centofanti alleged only that trial counsel was ineffective for mentioning Lt. Franks's testimony to the jury but failing to call him.[65]  So to the extent that Centofanti alleges ineffectiveness for failing to prepare Lt. Franks for trial, that allegation is unexhausted.  Centofanti's allegation of

---

[62] ECF No. 92-19 at 44.

[63] ECF No. 74 at 46–47.

[64] ECF No. 85 at 11.

[65] ECF No. 92-19 at 59–61.

1   ineffectiveness for failing to call Lt. Franks after telling the jury that he would was presented to

2   the state court and is exhausted.[66]

3              **4.      *Whether Centofanti can demonstrate cause and prejudice under*
               *<u>Martinez</u> to overcome the procedural default on the unexhausted*
4              *subclaims of ground 3(B) is deferred until the merits determination.*

5          In most cases, this court has rejected the arguments of petitioners who claim technical

6   exhaustion by procedural default while also claiming that they can establish cause and prejudice

7   or actual innocence to excuse that default.  On one hand, if a petitioner has a viable argument for

8   cause and prejudice or actual innocence under the substantially similar state and federal

9   standards, then he cannot establish that "it is clear that the state court would hold the claim

10  procedurally barred,"[67] and the ground is not technically exhausted.  On the other hand, if a

11  petitioner has no arguments for cause and prejudice or actual innocence, then the ground is

12  technically exhausted but also subject to dismissal as procedurally defaulted.

13         But when federal law recognizes a potential basis to excuse a procedural default and the

14  Nevada state courts do not, then the petitioner can argue in federal court both that a ground is

15  technically exhausted and that an excuse for the procedural default exists.  Trial-level IAC

16  claims allow a petitioner to do just that.  The United States Supreme Court held in *Martinez* that

17  ineffective assistance of state post-conviction counsel or the lack of counsel in state post-

18  conviction proceedings possibly can excuse a procedurally defaulted claim of ineffective

19

20

---

21  [66] Respondents also argue that the portion of ground 3(B)(5) alleging prejudice at sentencing due
    to counsel's trial errors is unexhausted.  Because I determine that ground 3(B)(5) is time-barred,
22  as discussed *infra*, I need not reach whether the claim is exhausted.  *See Cooper v. Neven*, 641
    F.3d 322, 327–38 (9th Cir. 2011) (stating that when a particular issue is dispositive, a district
23  court "need not consider alternative reasons for dismissing the petition").

    [67] *Sandgathe*, 314 F.3d at 376.

assistance of trial counsel.[68]  A petitioner must demonstrate that (1) the claim of ineffective assistance of trial counsel is substantial; (2) ineffective assistance of post-conviction counsel (or lack of counsel) is the cause of the default; (3) the postconviction proceedings were the initial review proceedings for the ineffective-assistance-of trial-counsel claim; and (4) state law requires, or practically requires, that the claim be raised in the initial postconviction proceedings.[69]

The Nevada Supreme Court has declined to recognize cause under *Martinez* as cause to overcome a state-law procedural bar.[70]  So, a Nevada habeas petitioner who relies on *Martinez*— and only *Martinez*—as a basis for overcoming a state procedural bar on an unexhausted claim can argue that the state courts would hold the claim procedurally barred, but that he nonetheless has a potentially viable argument for cause and prejudice under federal law.

Centofanti relies on *Martinez* to overcome the procedural default of his unexhausted subclaims in ground 3(B).  It doesn't appear from the current briefing that he has other potentially viable bases for demonstrating cause and prejudice that might be recognized by the state courts, which would preclude a finding of technical exhaustion by procedural default for the unexhausted claims.  I find that a cause-and-prejudice analysis under *Martinez* for Centofanti's unexhausted claims in ground 3(B) is appropriate here, but I'll wait to resolve it until after the parties have answered and replied, addressing the claims on their merits.  That way, I have the

---

[68] *Martinez*, 566 U.S. 1.

[69] *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

[70] *Brown v. McDaniel*, 331 P.3d 867 (Nev. 2014).

1  benefit of analyzing all of Centofanti's claims against a fully developed factual and legal

2  backdrop.[71]

3  **II.      Ground 5 is cognizable.**[72]

4        In ground 5, Centofanti alleges that the introduction of hearsay evidence violated his

5  Fourteenth Amendment right to a fundamentally fair trial.[73]  Respondents argue that a claim that

6  statements do not qualify under hearsay exceptions to state law is not cognizable on federal

7  habeas review.[74]  Generally, evidentiary matters arising in a state trial are not cognizable in

8  federal habeas unless a specific constitutional guarantee is violated or the error is of such

9  magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process.[75]

10  Because Centofanti included the constitutional dimension that the hearsay evidence violated his

11  right to a fair trial, ground 5 states a cognizable claim for federal habeas relief.

12  **III.     Timeliness**

13        Respondents argue that ground 5 and portions of grounds 3(B)(1), 3(B)(3), and 3(B)(5)

14  should be dismissed as untimely because they do not relate back to Centofanti's original

15  petition.[76]  A new claim in an amended petition that is filed after the expiration of the

16

---

17  [71] I emphasize that the court takes this action on the premise that Centofanti has a potentially
18  viable argument for cause and prejudice based on *Martinez*—and only *Martinez*.  If Centofanti
    offers other cause-and-prejudice arguments, we will return to a procedural posture in which the
19  next step is dictated instead by *Rose v. Lundy*, 455 U.S. 509 (1982), and its progeny.

    [72] Respondents also argue that ground 6 is non-cognizable, but because I held *supra* that ground
20  6 is unexhausted, I do not reach their alternative argument.

21  [73] ECF No. 74 at 56.

    [74] ECF No. 85 at 7.

22  [75] *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).

23  [76] Respondents also argue that portions of grounds 2 and 7 are untimely.  Because I already
    determined grounds 2 and 7 are procedurally defaulted, I need not consider whether they are
    untimely.  *See Cooper*, 641 F.3d at 327–38.

Antiterrorism and Effective Death Penalty Act's (AEDPA's) one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading.[77] An untimely amendment properly "relates back to the date of the original pleading" if it arises out of the same "conduct, transaction, or occurrence."[78] "Relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims."[79]

New claims in an amended habeas petition do not arise out of "the same conduct, transaction or occurrence" as prior claims merely because they challenge the same trial, conviction, or sentence.[80] Rather, to properly relate back, a new claim must arise from the same collection of facts alleged in the earlier petition.[81] An amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type" from those alleged in the timely petition.[82] The court is "obligated to 'liberally construe[ ] documents filed pro se,'" like Centofanti's original petition.[83]

### A.   Centofanti's karate-related allegation in ground 3(B)(1) is timely.

In ground 3(B)(1), Centofanti alleges that trial counsel rendered ineffective assistance for failing to introduce evidence of Gina's capacity for violence by presenting an expert witness on

---

[77] Fed. R. Civ. P. 15(c).

[78] *Id.*

[79] *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

[80] *Mayle*, 545 U.S. at 661; *Hebner v. McGrath*, 543 F.3d 1133, 1134 (9th Cir. 2008).

[81] *Mayle*, 545 U.S. at 661; *Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) (holding that one shared fact in two divergent legal theories was "not sufficient to conclude that they arise out of a common *core* of operative facts").

[82] *Mayle*, 545 U.S. at 650.

[83] *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (en banc).

karate.[84]  Centofanti contends that the claim relates back to the allegation in his original petition

that counsel was "ineffective for failing to secure the attendance of all necessary witnesses at

trial."[85]  Because the claims are tied to a common core of operative facts and a common legal

theory, I find that ground 3(b)(1) is not time-barred.

### B.    Centofanti's ground 3(B)(3) claim concerning expert witness Lisa DeMeo is timely.

In ground 3(B)(3), Centofanti alleges that trial counsel rendered ineffective assistance for

telling the jury that expert witness Lisa DeMeo was going to testify and then not calling her as a

witness.[86]  Centofanti asserts that this claim relates back to the allegation in his original petition

that "there were other defense experts (*i.e.*, Lt. Franks …) who did not testify as defense counsel

had represented they would in his opening statement."[87]  He also contends that he attached the

Nevada Court of Appeals' decision to his original petition, and that decision discussed his claim

that trial counsel was ineffective for referring to expected testimony of three witnesses (including

DeMeo) that counsel failed to call.[88]  Liberally construing Centofanti's original petition, I find

that he attempts to set out an IAC claim based on counsel's failure to call DeMeo and the Nevada

Court of Appeals' decision he attached provides greater detail about the facts supporting that

claim.  So because this claim relates back to the original petition, it is not time-barred.

---

[84] ECF No. 74 at 43.

[85] ECF No. 1-1 at 33.

[86] ECF No. 74 at 47–48.

[87] ECF No. 1-1 at 33.

[88] ECF No. 101 at 9 (citing *Ross*, 950 F.3d at 1167, for the proposition that if "a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back").

1

2
**C.      The portion of ground 3(B)(5) alleging prejudice at sentencing is dismissed
with prejudice as untimely.**

3       In ground 3(B)(5), Centofanti alleges that he was prejudiced by counsel's multiple errors

4 at trial and at sentencing.[89]  As relevant here, he asserts that counsel's inadequate performance at

5 trial caused the state-court judge to form a negative view of the defense and thus viewed

6 Centofanti as a "cold-blooded murderer" at sentencing.[90]  Respondents argue that Centofanti's

7 claim of prejudice at sentencing due to trial counsel's inadequate presentation of the self-defense

8 theory does not relate back because this theory of prejudice was never mentioned in Centofanti's

9 original petition—the original instead focused on the prejudice Centofanti contends that he

10 suffered during the trial phase.[91]  Centofanti responds that his allegation of prejudice at

11 sentencing relates back because he noted in his original petition that the state-court judge

12 "indicated, throughout the case, the absurdity of using a defense of self-defense"[92] and the record

13 reflects that the judge made several statements maligning the theory at sentencing.[93]

14       But even liberally construed, Centofanti's original petition didn't make the connection

15 between the inadequacies of his self-defense theory and the trial judge's consideration of that

16 theory when he sentenced Centofanti—that link was clearly raised for the first time in his

17 amended petition.  So because Centofanti's claim of prejudice at sentencing stemming from his

18 trial counsel's inadequate self-defense theory asserts a new ground for relief that depends on

19

20
_____

21 [89] ECF No. 74 at 50.

[90] *Id.*

22 [91] ECF No. 104 at 3.

23 [92] *See* ECF No. 1-3 at 36–37.

[93] ECF No. 101 at 10 (citing ECF No. 90-17 at 27 (state-court sentencing hearing transcript)).

1  "events separate in 'both time and type' from the originally raised" claim,[94] it does not relate

2  back and is dismissed with prejudice as untimely.[95]

3       **D.     Ground 3(C) is dismissed with prejudice as untimely.**

4       In ground 3(C), Centofanti alleges that counsel rendered ineffective assistance by failing

5  to object to the deadly weapon enhancement on double-jeopardy grounds.[96]  Centofanti does not

6  contest respondents' argument that ground 3(C) does not relate back to the original petition.

7  Because Centofanti fails to demonstrate that ground 3(C) relates back to his original petition, I

8  dismiss ground 3(C) with prejudice as untimely.

9       **E.     Ground 5 is timely.**

10       In ground 5, Centofanti alleges that the introduction of hearsay evidence violated his

11  Fourteenth Amendment right to a fundamentally fair trial.[97]  Tricia Miller, Gina's

12  friend, testified about the domestic incident leading to Gina's arrest.[98]  Centofanti alleges that

13  Miller's testimony was inadmissible hearsay because her statements did not qualify under any

14  exception to Nevada's hearsay rule.[99]  In his original petition, Centofanti alleges that hearsay

15  statements, including Miller's testimony, violated his right to a fair trial.[100]  I find that ground 5

16  relates back to allegations within Centofanti's original petition and is not time-barred.

17

---

18  [94] *Mayle*, 545 U.S. at 657.

19  
20  [95] Centofanti also alleges that this claim relates back to the argument in his original petition that the cumulative effect of trial counsel's errors violated his constitutional rights.  *See id*. at 11, 13, 30, 37–38; ECF No. 1-4 at 21; ECF No. 1-5 at 42–43.  But that vague statement cannot be said to relate to the same collection of facts as his very narrow prejudice-at-sentencing allegation.

21  [96] ECF No. 74 at 51.

22  [97] *Id*. at 56.

[98] *Id*.

23  [99] *Id*. at 56–57.

[100] ECF No. 1 at 18.

**Conclusion**

IT IS THEREFORE ORDERED that:

1. Respondents' **motion to dismiss [ECF No. 85] is GRANTED in part:**

   - **These claims are dismissed as procedurally defaulted**: grounds 2, ground 6, and ground 7;

   - **These claims are dismissed with prejudice as untimely**: ground 3(C) and the portion of ground 3(B)(5) arguing prejudice at sentencing with respect to Centofanti's claims of ineffective assistance of counsel for trial counsel's inadequate presentation of the self-defense theory;

   - The motion is denied as to all other claims.

2. **A decision on whether Centofanti can demonstrate cause and prejudice under** *Martinez* for ground 3(B)(1), the portion of ground 3(B)(2) referring to Trahin, and the portion of ground 3(B)(3) alleging ineffectiveness for not preparing Lt. Franks for trial **is DEFERRED** until after the parties have answered and replied. Respondents may reassert the procedural-default argument with respect to those claims in their answer.

3. **Respondents have until May 24, 2024, to FILE and SERVE an answer** addressing the remaining claims in Centofanti's first-amended petition.

4. Centofanti will have **60 days** from the date of service of the answer to **FILE AND SERVE** a reply.

_____
U.S. District Judge Jennifer A. Dorsey
March 25, 2024

21